29.069006

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JEWEL CARPENTER AND JOYCE CARPENTER** | * * | CIVIL ACTION NO. 06-8456 |
| | * | SECTION: L |
| VS | * | |
| | * | MAGISTRATE DIV. 2 |
| **STATE FARM INSURANCE COMPANY** | * * | HON. JUDGE: FALLON |
| | * | |
| | * | HON. MAG. JUDGE: |
| | * |     WILKINSON |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' MOLD CLAIMS

**NOW INTO COURT**, through undersigned counsel, comes State Farm Fire and Casualty Company ("State Farm"), which submits this Memorandum of Law in Support of Its Motion for Partial Summary Judgment as to Plaintiffs' Mold Claims. Plaintiffs allege that their property sustained mold damage after Hurricane Katrina and have produced to State Farm an estimate for mold remediation.

Plaintiffs, however, may not recover for mold damage in this lawsuit, regardless of what is alleged to have caused the mold growth. Plaintiffs' homeowners policy, as amended by the "Fungus (Including Mold) Exclusion Endorsement," explains that mold damage is not covered, "regardless of . . . the cause of the [mold] or . . . whether other causes acted concurrently or in any sequence with the [mold] to produce the loss." (Homeowners Policy at 10 & Fungus (Including Mold) Exclusion Endorsement, attached as Exh. A.) Indeed, just two months ago,

Judge Zainey upheld this exact same endorsement, holding that "even where mold results from a covered caused of loss *the endorsement unambiguously excludes coverage*." *Deutsch v. State Farm Fire and Casualty Co.*, No. 06-8450, 2009 WL 2599234, at *3 (E.D. La. Aug. 21, 2009) (emphasis added). Accordingly, this Court should grant State Farm's Motion for Partial Summary Judgment and enter an Order providing that Plaintiffs may not recover for mold damage in this case.

## BACKGROUND

Plaintiffs Jewel and Joyce Carpenter own a house located at 5047 Radcliff Street in Marrero, Louisiana. State Farm issued Plaintiffs Homeowners Policy No. 18-51-4640-8 insuring Plaintiffs' property in the amount of $93,200 for dwelling and $9,320 for dwelling extensions ("Coverage A"), $69,900 for personal property ("Coverage B"), and loss of use ("Coverage C").

On August 29, 2005, Plaintiffs' property was damaged by Hurricane Katrina. Plaintiffs' property did not flood, and their wind damage was not extensive. State Farm issued Plaintiffs a $2,500 advance payment on September 6, 2005. (*See* Payments at 0022, attached as Exh. B.)

During September and October of 2005, State Farm periodically inquired about Plaintiffs' damages, but Plaintiffs maintained that they were away from their house and had not started to estimate their damages. (*See* Activity Log Nos. 4, 5, 8, 9, 10, 11, at 0017-18, attached as Exh. C.)

On December 17, 2005, a State Farm representative called Plaintiffs. Plaintiff Jewel Carpenter told State Farm that he did not want State Farm to inspect his property at that time. State Farm's contemporaneous log notes state: "[H]e said that he does [not want] me to come out yet for an inspection, he is gathering his information and will call when he has it all together,

and is ready for an adjuster to come out, he wants to get estimates and bids [beforehand]." (*Id.* at No. 14, Exh. C, at 0017.)

On December 14, 2005, another State Farm representative spoke with Plaintiffs. Mr. Carpenter again refused to allow State Farm to inspect his property: "[Policyholder] does not want anybody to inspect until he has all of his estimates in hand. This has happened to the previous adjuster. He is firm! on this. Close [the claim] until [policyholder] wants to re-open." (*Id.* at No. 16.) Plaintiffs had no further contact with State Farm until August 29, 2006, when they filed this suit.

Since Plaintiffs filed this suit, State Farm was permitted to inspect Plaintiffs' property. Based on these inspections, State Farm made additional payments to Plaintiffs. In total, State Farm has paid Plaintiffs $17,344.00 under Coverage A for damage to Plaintiffs' dwelling (including the $2,500 advance payment); and $1,302.49 under the "Prohibited Use" coverage in Plaintiffs' homeowners policy. Exh.s B and D.

Plaintiffs testified at their depositions that their home and personal property suffered mold damage. (*See, e.g.*, Jewel Carpenter Dep. vol. I, attached as Exh. E, at 31:3-8 ("all the carpet in the house was wet and molded"), 31:12-14 (testifying that he could smell mold); Joyce Carpenter Dep. vol. I, attached as Exh. F, at 44:14-45:13 (testifying that there was mold on carpets and ceiling).) Plaintiffs have submitted to State Farm – in the context of this litigation – documents that relate to claims for alleged mold and mildew damage, including (i) an August 17, 2009 report from Ronald Federici of Mold Testing and Remediation, LLC, which alleged, *inter alia*, "[s]uspected fungal growth," (*see* Federici Rep., attached as Exh. G); and (ii) an August 24, 2009 mold estimate from Scott Dowdy, also of Mold Testing & Remediation, alleging

$15,715.52 in mold-related remediation.  (*See* Dowdy Estimate, attached as Exh. H.)  Plaintiffs' homeowners policy, however, expressly excludes mold damage, regardless of its cause.

## ARGUMENT

In Louisiana, "insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Edwards v. Daugherty*, 883 So. 2d 932, 947 (La. 2004).  The Louisiana Supreme Court has held that "[t]he judicial responsibility in interpreting insurance contracts is to determine the parties' common intent.  The parties' intent as reflected by the words in the policy determines the extent of coverage.  Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So. 2d 759, 763 (citations omitted).  The Louisiana Supreme Court further explained that "Louisiana jurisprudence cautions against the alteration of unambiguous policy terms under the guise of interpretation." *Id.* at 769.  "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. . . . When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation." *Id.* at 763-64 (citations omitted).

Here, the plain and unambiguous terms of Plaintiffs' homeowners policy expressly exclude coverage for mold damage.  Specifically, the policy, as amended by Plaintiffs' "Fungus (Including Mold) Exclusion Endorsement," states as follows:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with

4

    the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

\* \* \*

    g.  Fungus. We also do not cover:

        (1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;

        (2) any remediation of fungus, including the cost to:

            (a) remove the fungus from covered property or to repair, restore or replace that property; or

            (b) tear out and replace any part of the building or other property as needed to gain access to the fungus; or

        (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

(Homeowners Policy, Exh. A, at 10-11 & Fungus (Including Mold) Exclusion Endorsement (boldface omitted).) "Fungus" is defined as "any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi." (*Id.* at Fungus (Including Mold) Exclusion Endorsement.)

    The lead-in language of the mold exclusion is the same as that which leads in the policy's flood exclusion, and has been upheld as valid, enforceable, and unambiguous by the Fifth Circuit. *See, e.g.*, *Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671, 674-75 & n.11 (5th Cir. 2009); *Bilbe v. Belsom*, 530 F.3d 314, 317 n.3 (5th Cir. 2008). Therefore, according to the plain language of Plaintiffs' Homeowners Policy, mold damage is not covered, "regardless of . . . the cause of the [mold] or . . . whether other causes acted concurrently or in any sequence with the [mold] to produce the loss." (Homeowners Policy, Exh. A, at 10.)

Just two months ago, in *Deutsch v. State Farm Fire and Casualty Co.*, No. 06-8450, 2009 WL 2599234 (E.D. La. Aug. 21, 2009), a Hurricane Katrina insurance case, Judge Zainey rejected an attempt by the plaintiffs to recover for mold damage under this exact same endorsement. Judge Zainey held, in no uncertain terms, that State Farm's Fungus (Including Mold) Exclusion Endorsement is unambiguous, and excludes even mold damage that was caused by a covered peril: "The mold endorsement specifically states that a loss attributable to mold is not covered regardless of its cause or other causes at play. ***Thus, even where mold results from a covered caused of loss the endorsement unambiguously excludes coverage***." *Id.* at *3 (emphasis added). Other courts in Louisiana have upheld similar mold exclusion language. *See Ace Am. Ins. Co. v. Adm'rs of the Tulane Educ. Fund*, No. 07-3749, 2008 WL 4091013, at *1 (E.D. La. Aug. 29, 2008) (Lemelle, J.) ("[G]iven the clear language of [the mold] exclusion . . . the Court finds that the Ace American policy excludes damage caused by mold, even if the mold is caused by windstorm."); *Morgan v. Auto Club Family Ins. Co.*, 04-1562, p. 5 (La. App. 3 Cir. 4/06/05), 899 So. 2d 135, 137 ("[L]oss of property caused by mold is specifically excluded from coverage under the policy even though the mold damage may have resulted from lack of ventilation in the attic.").

Indeed, courts around the country have upheld similar mold exclusions. For example, one court considering a State Farm policy with a similar mold exclusion found that State Farm was not liable for mold damage allegedly caused by a bathtub leak: "The Policy unambiguously excludes coverage for losses resulting from mold, regardless of . . . the reason for the mold's growth in the home." *Sammons v. State Farm Fire & Cas. Co.*, No. 4:05-cv-0028-JDT-WGH, 2006 WL 1547102, at *4 (S.D. Ind. June 2, 2006). In another recent case, a water shut-off valve connected to a washing machine ruptured, causing water damage to several rooms in the

6

Plaintiffs' house, thus resulting in mold growth. *See DeVore v. Am. Family Mut. Ins. Co.*, 891 N.E.2d 505, 507 (Ill. App. Ct. 2008). Although the insurer made certain payments, it refused coverage for services relating to removal or containment of mold. *See id.* The DeVore insurance policy, like Plaintiffs' policy, excluded losses "'resulting directly or indirectly from or caused by . . . mold . . . regardless of any other cause or event contributing concurrently or in any sequence to the loss.'" *Id.* at 508 (first ellipsis in original). The court held:

> The policy language in this case clearly and unambiguously excludes coverage for losses that resulted from mold caused by the water event at the DeVores' home. . . . We do not understand how much clearer [the insurer] could have been in excluding coverage relating to an event such as this one, wherein water caused damage to a home and created mold in the home.

*Id.* Likewise, another court excluded mold damage under similar policy language, explaining that the exclusion "is designed to eliminate the argument that before there was mold damage, there was [covered] water or dampness that caused the mold." *Predeteanu v. Auto-Owners Ins. Co.*, No. 267718, 2006 WL 2613555, at *2 (Mich. Ct. App. Sept. 12, 2006); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 348 (5th Cir. 2008) (*per curiam*) ("Water must be present for mold to grow. If every plumbing leak were a way around the mold exclusion, that exclusion would be meaningless."); *Hathaway Dev. Co. v. Ill. Union Ins. Co.*, 274 F. App'x 787, 792 (11th Cir. 2008) (*per curiam*) (affirming denial of mold remediation coverage under mold exclusion).

## CONCLUSION

In sum, Plaintiffs' homeowners policy expressly excludes coverage for mold damage, no matter what is alleged to have caused the mold. Accordingly, this Court should enter an Order providing that Plaintiffs may not recover for mold damage, testing, and/or remediation in this case, including the fees or estimates of Ronald Federici, Scott Dowdy, or Mold Testing and Remediation, LLC.

7

Respectfully submitted:

s/ Tara L. Mason
_____
BURT K. CARNAHAN, #3920
TARA L. MASON, #24544
LOBMAN, CARNAHAN, BATT,
ANGELLE & NADER
THE TEXACO CENTER, SUITE 2300
400 POYDRAS STREET
NEW ORLEANS, LOUISIANA  70130
(504) 586-9292   FAX (504) 586-1290

*and Co-Counsel:*

DAVID V. JONES, #1086925
JONES ANDREWS & ORTIZ
10100 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 344-3900     Fax (210) 366-4301
*Attorneys for State Farm Fire and Casualty Co.*

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on this ___20th_____ day of October, 2009, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Richard C. Trahant:   trahant@cavtel.net
    Jack E. Morris:   jem@jemorrislaw.com
    John Denenea, Jr.:   jdenenea@midcitylaw.com

                          s/ Tara L. Mason_____