29.069006

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JEWEL CARPENTER AND JOYCE CARPENTER** | * * | CIVIL ACTION NO. 06-8456 |
| | * | SECTION: L |
| VS | * | |
| | * | MAGISTRATE DIV. 2 |
| **STATE FARM INSURANCE COMPANY** | * * | HON. JUDGE: FALLON |
| | * | |
| | * | HON. MAG. JUDGE: |
| | * | WILKINSON |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \*

### STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN ADDITIONAL LIVING EXPENSE CLAIMS

**NOW INTO COURT**, through undersigned counsel, comes State Farm Fire and Casualty Company ("State Farm"), who respectfully submits this Memorandum of Law in Support of Its Motion for Partial Summary Judgment as to Plaintiffs' claim for certain additional living expenses ("ALE").

Plaintiffs' home was damaged during Hurricane Katrina. Plaintiffs evacuated their home before Hurricane Katrina, and the area surrounding their home was closed by the civil authorities after the hurricane. Plaintiffs testified that they returned to their home in late September 2005, lived in their house through at least December 2005, and continued to live either in their house or in a FEMA trailer on their property until April 2006, when Plaintiffs resettled in West Monroe.

Plaintiffs now argue that they are owed additional living expenses ("ALE") under "Coverage C" of their homeowners policy, which provides insurance coverage "[w]hen a Loss

Insured causes the residence *to become uninhabitable*." (*See* R. Doc 189, Ex. A at p. 4 - Pl. Homeowners Policy (emphasis added).) However, Plaintiffs were able to return to and resettle in their home just a few weeks after Hurricane Katrina, and they concededly lived there through at least December 2005. "[B]y definition, to be un-inhabitable (or unfit to live in), the home would have to have been unable to be lived in by the plaintiffs." *Williams v. Auto Club Family Ins. Co.*, No. 06-4829, 2007 WL 2436680, at *3 (E.D. La. Aug. 22, 2007). Accordingly, Plaintiffs may not recover ALE allegedly incurred when they actually resided in their house.

Nor may Plaintiffs recover ALE after they resettled in West Monroe. The plain language of Plaintiffs' policy eliminates ALE coverage after policyholders "settle elsewhere." (*See* R. Doc 189, Ex. A at p. 4 - Pl. Homeowners Policy.) *See also Thomas v. Mich. Basic Prop. Ins. Ass'n*, No. 226517, 2002 WL 227015, at *3 (Mich. Ct. App. Feb. 12, 2002) ("[B]y defining covered additional expenses in relation to the shortest period necessary for the family to 'settle elsewhere,' the policy plainly anticipates paying expenses for a transitional period, not the long-term financial consequences of acquiring new housing."). Accordingly, Plaintiffs may not recover any ALE allegedly incurred after they settled in West Monroe.

## **BACKGROUND**

Plaintiffs Jewel and Joyce Carpenter own a house located at 5047 Radcliff Street in Marrero, Louisiana. State Farm issued Plaintiffs Homeowners Policy No. 18-51-4640-8 insuring Plaintiffs' property in the amount of $93,200 for dwelling and $9,320 for dwelling extensions ("Coverage A"), $69,900 for personal property ("Coverage B"), and loss of use ("Coverage C"). (*See* R. Doc 189, Ex. A - Pl. Homeowners Policy.) On August 29, 2005, Plaintiffs' property was damaged by Hurricane Katrina. Plaintiffs' property did not flood, and their wind damage was not extensive.

Plaintiffs evacuated their home before Hurricane Katrina. After the hurricane, the civil authorities closed off the area surrounding their home. In fact, Plaintiffs testified that they "tried to come back, but armed guards told [them that they] had to turn around and go back." (Jewel Carpenter Dep. vol. I at 49:10-25, attached as Exh. A.) Plaintiffs eventually moved back into their home three weeks after Hurricane Katrina, in the end of September 2005. (*See* Joyce Carpenter Dep. vol. I at 41:22-42:7, attached as Exh. B.) Mrs. Carpenter testified that they resided in their home from September 2005 through April 2006:

> Q. How long after Hurricane Katrina did you and Mr. Carpenter reside at that home?
>
> A. We – after Katrina, we moved back in September of '05. We stayed there through April.

(Joyce Carpenter Dep. vol. II at 12:13-18, attached as Exh. C; *see also* Joyce Carpenter Dep. vol. I, Exh. B, at 41:22-42:7 (same).) At another point in her deposition, however, Mrs. Carpenter testified that she actually lived in a FEMA trailer starting sometime in December of 2005. (*See* Joyce Carpenter Dep. vol. II, Exh. D, at 12:13-18.)

In April of 2006, Plaintiffs moved to a house they purchased in West Monroe, Louisiana. (*See* Jewel Carpenter Dep. vol. I, Exh. B, at 42:7-13; Joyce Carpenter Dep. vol. II, Exh. C, at 12:8-10.) Plaintiffs testified that they plan to stay in West Monroe permanently. (*See* Joyce Carpenter Dep. vol. I, Exh. C, at 12:16-18.)

After Hurricane Katrina, State Farm periodically inquired about Plaintiffs' damages, but Plaintiffs maintained that they were away from their house and had not started to estimate their damages. (*See* R. Doc 189, Ex. C at Activity Log Nos. 4, 5, 8, 9, 10, 11, at 0017-18.)

On December 17, 2005, a State Farm representative called Plaintiffs. Plaintiff Jewel Carpenter told State Farm that he did not want State Farm to inspect his property at that time. State Farm's contemporaneous log notes state: "[H]e said that he does [not want] me to come

3

out yet for an inspection, he is gathering his information and will call when he has it all together, and is ready for an adjuster to come out, he wants to get estimates and bids [beforehand]." (*Id.* R. Doc 189, Ex. C at No. 14, at 0017.)

On December 14, 2005, another State Farm representative spoke with Plaintiffs. Mr. Carpenter again refused to allow State Farm to inspect his property: "[Policyholder] does not want anybody to inspect until he has all of his estimates in hand. This has happened to the previous adjuster. He is firm! on this. Close [the claim] until [policyholder] wants to re-open." (*Id.* R. Doc 189, Ex. C at No. 16, at 0017.) Plaintiffs had no further contact with State Farm until August 29, 2006, when they filed this suit.

Since Plaintiffs filed this suit, State Farm was permitted to inspect Plaintiffs' property. Based on these inspections, State Farm made additional payments to Plaintiffs. In total, State Farm has paid Plaintiffs $17,344.00 under Coverage A for damage to Plaintiffs' dwelling (including the $2,500 advance payment); and $1,302.49 under the "Prohibited Use" coverage in Plaintiffs' homeowners policy. (*See* R. Doc 189, Exh.s B and D.) Specifically, Prohibited Use coverage, which is separate and distinct from Additional Living Expense coverage, provides that "[i]f a civil authority prohibits your use of the residence premises because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental Value Coverage . . . for a period not exceeding two weeks while use is prohibited." (*See* R. Doc 189, Ex. A, at pp 4 – 5 - Pl. Homeowners Policy.)

## **LAW AND ARGUMENT**

### I.  STANDARDS FOR SUMMARY JUDGMENT

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see, e.g.*, *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l*

4

*Marine Terminals*, Inc., 87 F.3d 755, 758 (5th Cir. 1996). A "party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

> Where, as here, the non-moving party has the burden of proof to establish its claim,
>
> [t]he moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim. In this circumstance, if the non-moving party can point to nothing in the record supporting its claim, summary judgment is appropriate.

*Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002); *see also Tyson v. Tammany Holding Corp.*, No. 06-10764, 2007 WL 954785, at *3 (E.D. La. Mar. 27, 2007) (McNamara, J.) ("The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim.").

Furthermore, "when the parties have been given adequate opportunity for discovery, a party bearing the burden of proof must offer evidence sufficient to raise a genuine issue of material fact on the elements of his case or suffer an adverse summary judgment." *Noyola v. Tex. Dep't Human Res.*, 846 F.2d 1021, 1023 (5th Cir. 1988); *see Fontenot v. Upjohn Co.*, 780 F.2d 1021, 1192 (5th Cir. 1986) (affirming summary judgment where no evidence after seven months of discovery); *Tyson*, 2007 U.S. Dist. LEXIS 21821, at *7-8 (granting summary judgment where no evidence more than two years after accident and one year after suit was filed).

Rule 56(c) requires the nonmovant to go beyond the pleadings and demonstrate by admissible evidence that specific facts exist over which there is a genuine issue for trial. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, or a mere scintilla of

5

evidence. *See Little*, 37 F.3d at 1075. A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis omitted). "[S]uch a party should not be entitled to put her opponent to trial on the merits by making the bare allegations of notice pleading." *Fontenot v. Upjohn*, 780 F.2d 1190, 1192 (5th Cir. 1986).

## II. PLAINTIFFS MAY NOT RECOVER ALE ALLEGEDLY INCURRED WHEN THEY ACTUALLY LIVED IN THEIR HOUSE

It is well-settled in Louisiana that "the insured bears the burden of proving a policy of insurance affords coverage for an incident." *See Jones v. Santiago*, 2003-1424, p. 12 (La. 4/14/04), 870 So. 2d 1002, 1010; *see also Cent. La. Elec. Co., Inc. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 986 n.11 (La. 1991) ("In an action on an insurance policy, the insured has the burden of proving facts which bring his claim within the coverage of the policy."). Under the plain and unambiguous terms of Plaintiffs' policy, additional living expense ("ALE") coverage under Coverage C is provided only "[w]hen a Loss Insured causes the residence premises to become ***uninhabitable***." (*See* R. Doc 189, Ex. A at p. 4 - Homeowners Policy (emphasis added).)

Courts in this District have dismissed Hurricane Katrina ALE claims on summary judgment where the plaintiffs did not identify any record materials showing that their home was rendered uninhabitable by wind damage. In *Jones v. State Farm Fire & Casualty Co.*, No. 06-9151, ECF Doc. No. 91 (E.D. La. Aug. 21, 2009), for example, Judge Feldman recognized in a Hurricane Katrina case that "[t]o recover additional living expenses under [their homeowners] policy, plaintiffs must show that their house was rendered uninhabitable due to a covered loss." *Id.* at 12. Because the plaintiffs did not satisfy their summary judgment burden, the court granted State Farm's motion for summary judgment. *See id.* at 12-13. Similarly in *Bayle v. Allstate Insurance Co.*, No. 08-1319, 2008 WL 5054572, at *2 (E.D. La. Nov. 21, 2008), Judge McNamara dismissed the plaintiffs' ALE claims where they "offered no competent summary

6

judgment evidence that wind (or some other covered peril) . . . rendered their home uninhabitable." *Id.* at *2; *see also, e.g.*, *Williams v. Allstate Ins. Co.*, No. 09-0062, 2008 WL 5110604, at *3 (E.D. La. Nov. 26, 2008) (McNamara, J.) (same).

Here, Plaintiffs have not identified – and cannot identify – any record materials showing that their home was rendered uninhabitable by wind damage or any other loss insured by Plaintiffs' homeowners policy. Nor could they. "[B]y definition, to be un-inhabitable (or unfit to live in), the home would have to have been unable to be lived in by the plaintiffs." *Williams v. Auto Club Family Ins. Co.*, No. 06-4829, 2007 WL 2436680, at *3 (E.D. La. Aug. 22, 2007). Here, as explained above, Plaintiffs returned to their house in September 2005 and lived there through at least December 2005. Plaintiffs have not shown – and cannot show – that their home was uninhabitable during this period because they did, in fact, live there. Accordingly, Plaintiffs may not recover ALE allegedly incurred when they actually resided in their house.

## III. PLAINTIFFS ARE NOT ENTITLED TO ALE AFTER THEY RESETTLED IN WEST MONROE

Plaintiffs also may not recover any ALE allegedly incurred after they settled in West Monroe in April of 2006. Plaintiffs' policy unequivocally states that ALE coverage is provided "for the shortest time required (a) to repair or replace the premises or (b) *for your household to settle elsewhere*, but not to exceed 12 months." (R. Doc 189, Ex. A at p. 4 - Homeowners Policy (emphasis added).) As one court has explained:

> [B]y defining covered additional expenses in relation to the shortest period necessary for the family to "settle elsewhere," the policy plainly anticipates paying expenses for a transitional period, not the long-term financial consequences of acquiring new housing. By the time the Thomases found their new home on Robson and acquired their mortgage, they had "settled" there.

*Thomas v. Mich. Basic Prop. Ins. Ass'n*, No. 226517, 2002 WL 227015, at *3 (Mich. Ct. App. Feb. 12, 2002).

7

As explained above, Plaintiffs testified that they permanently settled in their new West Monroe home in April of 2006. Because Plaintiffs concededly "settle[d] elsewhere" in April of 2006, the unambiguous language of their policy precludes any recovery of ALE damages after that time. Accordingly, Plaintiffs may not recover any ALE allegedly incurred after they settled in West Monroe.

## CONCLUSION

For all the foregoing reasons, State Farm respectfully requests that this Court grant State Farm's Motion for Partial Summary Judgment as to Plaintiffs' claim for certain additional living expenses and enter an Order providing (i) that Plaintiffs may not recover ALE allegedly incurred when they actually resided in their house, and (ii) that Plaintiffs may not recover any ALE allegedly incurred after they settled in West Monroe.

Respectfully submitted:

s/ Tara L. Mason
_____
BURT K. CARNAHAN, #3920
TARA L. MASON, #24544
LOBMAN, CARNAHAN, BATT,
ANGELLE & NADER
THE TEXACO CENTER, SUITE 2300
400 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130
(504) 586-9292   FAX (504) 586-1290

*and Co-Counsel:*

DAVID V. JONES, #1086925
JONES ANDREWS & ORTIZ
10100 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 344-3900    Fax (210) 366-4301
**Attorneys for State Farm Fire and Casualty Co.**

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on this \_\_\_20th\_\_\_\_\_ day of October, 2009, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Richard C. Trahant:     trahant@cavtel.net
Jack E. Morris:           jem@jemorrislaw.com
John Denenea, Jr.:      jdenenea@midcitylaw.com

                             s/ Tara L. Mason