29.069006

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JEWEL CARPENTER AND JOYCE CARPENTER** | * * | CIVIL ACTION NO. 06-8456 |
| | * | SECTION: L |
| VS | * | |
| | * | MAGISTRATE DIV. 2 |
| **STATE FARM INSURANCE COMPANY** | * * | HON. JUDGE:  FALLON |
| | * | |
| | * * | HON. MAG. JUDGE:      WILKINSON |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \*

### STATE FARM FIRE AND CASUALTY COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' MOLD CLAIMS

**NOW INTO COURT**, through undersigned counsel, comes State Farm Fire and Casualty Company ("State Farm"), which submits this Reply Memorandum of Law in Further Support of Its Motion for Partial Summary Judgment as to Plaintiffs' Mold Claims.

In its opening memorandum, State Farm explained that Plaintiffs' homeowners policy unambiguously excludes mold damage, "regardless of . . . the cause of the [mold] or . . . whether other causes acted concurrently or in any sequence with the [mold] to produce the loss." (Homeowners Policy at 10-11 & Fungus (Including Mold) Exclusion Endorsement, Dkt. 189-4 at 15-16, 32.)  Plaintiffs concede that this is the case.  (*See* Dkt. 196 ("Pl. Opp.") at 5 (quoting homeowners policy).)  Thus, this Court need go no further.  State Farm respectfully requests that this Court enter an Order providing that "even where mold results from a covered cause of loss[,]

the endorsement unambiguously excludes coverage." *Deutsch v. State Farm Fire & Cas. Co.*, No. 06-8450, 2009 WL 2599234, at *3 (E.D. La. Aug. 21, 2009) (Zainey, J.).

Plaintiffs argue that State Farm's motion should be denied because "[e]ven though [their purported experts] are representatives of an entity named *Mold Testing & Remediation*, [which issued a "MOLD" estimate,] these documents . . . fail to satisfy State Farm's burden of proving any of the damages would not have occurred in the absence of mold." (Pl. Opp. at 7.) However, State Farm's present motion requests a determination that Plaintiffs' insurance policy excludes coverage for mold, regardless of its cause. This is a matter of policy interpretation, which is a question of law for the Court, not a question of fact. *See La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So. 2d 759, 763 ("The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent . . . as reflected by the words in the policy . . . ." (citations omitted)); *see also Deutsch*, 2009 WL 2599234, at *5 (upholding State Farm's mold exclusion and explaining: "The Court does not find that material issues of fact present an obstacle to the issues that State Farm has presented via its motion for summary judgment."). The jury will determine how much of Plaintiffs' alleged damages are excluded.

Recognizing that their homeowners policy unambiguously excludes mold damage, regardless of its cause, Plaintiffs attempt to shoehorn their alleged mold damages into bad faith damages, arguing that "but for State Farm's bad faith claim adjusting," Plaintiffs "'would have fixed up the house'" and "no mold would have grown on the ceiling." (Pl. Opp. at 8-9 (quoting deposition testimony).) The issue of bad faith is not presently before this Court. For the purposes of this motion, however, it is notable that Plaintiffs do not dispute that ***they repeatedly refused to allow State Farm to inspect their home*** – thereby breaching their post-loss duties,

which are conditions precedent to any recovery even for covered losses. (*See* Homeowners Policy at 12-13, Dkt. 189-4 at 17-18.) Indeed, in State Farm's opening memorandum, State Farm demonstrated that it attempted to inspect Plaintiffs' house at least twice, but both times were rebuffed by Plaintiff Jewel Carpenter. (*See* Dkt. 189-2 ("SF Mem.") at 2-3.) Mr. Carpenter promised to contact State Farm when he obtained estimates of his house, but he never did. Thus, Plaintiffs' allegations of bad faith fall flat. *See, e.g.*, *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009) ("[A]n insured who fails to provide his insurer with information required to process his claim cannot then claim the insurer acted arbitrarily in delaying payment."); *Tardo v. State Farm Fire and Casualty Co.*, No. 08-1165, 2009 WL 1804762 (E.D. La. June 19, 2009) (Africk, J.) ("In light of State Farm's contention that plaintiffs never, prior to the filing of this lawsuit, submitted any information showing that they were entitled to additional benefits or that they requested the same, plaintiffs cannot survive summary judgment solely by offering evidence of conduct that they contend was arbitrary and capricious. Plaintiffs must also offer evidence that they apprised State Farm of the extent of their wind-caused damage." (footnote omitted)). Plaintiffs simply elide over the undisputed fact that they explicitly told State Farm not to adjust their claim. Louisiana law does not force State Farm to choose between bad faith and trespass.

Even if Plaintiffs could maintain their bad faith claims (and they cannot), Plaintiffs have the burden of proving their alleged consequential bad faith damages. *See, e.g.*, *Davis v. Allstate Ins. Co.*, No. 07-4572, 2009 WL 122761, at *7 (E.D. La. Jan. 15, 2009) (Lemmon, J.) ("Under La.Rev.Stat. 22:1220, a plaintiff may recover general damages . . . provided these damages are proven."); *Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 475 (E.D. La. 2007) (Vance, J.) ("If plaintiffs can prove that Allstate acted in bad faith . . . proven general or special damages are

recoverable."). Further, as this Court has recognized, "in bad faith actions against an insurer, the insured bears a considerable burden because the insured is seeking extra-contractual damages, as well as punitive damages." *Jupiter v. Auto. Club Inter-Insurance Exch.*, No. 07-1689, 2009 WL 1458028, at *3 (E.D. La. May 26, 2009) (Fallon, J.) (quotation marks omitted).

Here, however, Plaintiffs have not even proved that their property sustained ***any*** mold damage. Indeed, recognizing that mold damage is clearly excluded, Plaintiffs' opposition brief seeks to downplay both the purported existence of mold in their house and the extent to which any such mold represents an element or cause of their alleged property damage. (*See* Pl. Opp. at 6-7.) Moreover, Plaintiffs' purported expert, Ron Federici, testified at his deposition that the only way to confirm whether there is actually mold in a residence is to take a sample of the ambient air, drywall, or suspected mold, and to have it sampled by a reputable laboratory. (*See* Federici Dep. at 31:15-35:13, attached as Exh. I.) Mr. Federici confirmed that he did none of these things:

> Q. Do I understand, then, that you did no sampling of any kind to determine whether mold existed in Mr. and Mrs. Carpenter's home?
>
> A. That's correct.

(*Id.* at 33:2-6.) Thus, Mr. Federici testified that he could not determine whether there is actually mold in the house:

> Q. We don't know whether there is actually mold in that house today, because the kind of testing you said is required has not been performed by anybody?
>
> A. That's correct.

(*Id.* at 68:16-20, attached as Exh. J.) Similarly, Scott Dowdy, Plaintiffs' other purported expert, also testified that he could not determine whether there is any mold in Plaintiffs' property:

> Q. And with all being said, we still don't know whether there's mold out there, do we?

4

      A.    Not without the lab results.

(Dowdy Dep. at 90:11-14, attached as Exh. K.)  Because Plaintiffs' purported experts testified that they cannot even determine whether there is mold in Plaintiffs' property, Plaintiffs cannot, as a matter of law, recover purely speculative mold damage as part of any bad faith recovery.

In sum, Plaintiffs' homeowners' policy expressly excludes coverage for mold damage, no matter what is alleged to have caused the mold.  For all the foregoing reasons, and for the reasons in State Farm's opening memorandum, this Court should enter an Order providing that Plaintiffs may not recover for mold damage, testing, and/or remediation in this case, including the fees or estimates of Ronald Federici, Scott Dowdy, or Mold Testing and Remediation, LLC.

Respectfully submitted:

s/ Tara L. Mason

_____
BURT K. CARNAHAN, #3920
TARA L. MASON, #24544
LOBMAN, CARNAHAN, BATT,
ANGELLE & NADER
THE TEXACO CENTER, SUITE 2300
400 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130
(504) 586-9292   FAX (504) 586-1290

*and Co-Counsel:*

DAVID V. JONES, #1086925
JONES ANDREWS & ORTIZ
10100 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 344-3900     Fax (210) 366-4301
*Attorneys for State Farm Fire and Casualty Co.*

## CERTIFICATE OF SERVICE

    I do hereby certify that I have on this __3rd_____ day of November, 2009, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Richard C. Trahant: | trahant@cavtel.net |
| Jack E. Morris: | jem@jemorrislaw.com |
| John Denenea, Jr.: | jdenenea@midcitylaw.com |

                                            s/ Tara L. Mason