UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEWEL CARPENTER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-8456** |
| **STATE FARM INSURANCE COMPANY, ET AL.** | **SECTION "L" (1)** |

**ORDER & REASONS**

Before the Court are the Defendant's Motion for Partial Summary Judgment as to Plaintiff's Mold Claims (Rec. Doc. 189) and Defendant's Motion for Partial Summary Judgment as to Certain Additional Living Expenses Claims (Rec. Doc. 190). These motions were taken under submission on the briefs on November 4, 2009. For the following reasons, Defendant's Motion for Partial Summary Judgment as to Plaintiff's Mold Claims (Rec. Doc. 189) IS DENIED and Defendant's Motion for Partial Summary Judgment as to Certain Additional Living Expenses Claims (Rec. Doc. 190) IS GRANTED IN PART AND DENIED IN PART.

**I.     BACKGROUND**

This case arises out of a dispute regarding insurance coverage for the Plaintiffs' residence located at 5047 Radcliff Street in Marrero, Louisiana, which was damaged during Hurricane Katrina. On August 29, 2006, the Plaintiffs filed suit in state court against State Farm Fire & Casualty Company ("State Farm"), their homeowner's insurance carrier. On October 18, 2006, State Farm removed the case to this Court. The parties do not dispute that at the time of the storm, Plaintiff's were insured by State Farm pursuant to Policy No. 18-51-4640-8, which

1

provided coverage in the amount of $93,200 for dwelling ("Coverage A"), $69,900 for personal property ("Coverage B"), $9,320 for dwelling extensions and actual loss for alternative living expenses ("Coverage C"). The policy also contained a provision applicable to coverage for mold which read:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of ... fungus. We also do not cover: (1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus; (2) any remediation of fungus, including the cost to: (a) remove the fungus from covered property or to repair, restore or replace that property; or (b) tear out and replace any part of the building or other property as needed to gain access to the fungus; or (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

Pursuant to the policy, the definition of fungus included mold.

After the Plaintiffs evacuated during Hurricane Katrina, they returned home in September of 2005 to find that their house had been damaged by the storm. The house had not flooded, but the Plaintiffs reported other damage including roof damage and a carpet that was wet and moldy. From the time that they returned home in September until sometime in December, the Plaintiffs lived in their damaged home. In December, the Plaintiffs moved into a FEMA trailer on their property until April of 2006, when they moved to West Monroe, Louisiana. The plaintiffs still reside in West Monroe at this time.

On September 6, 2005, State Farm issued a $2,500 advance payment to the Carpenters. Although State Farm made multiple attempts to inspect Plaintiffs' property and had other

2

communication with the Plaintiffs during September, October and December of 2005, the property was never inspected or adjusted by State Farm prior to the initiation of this lawsuit in August of 2006.  Subsequently, the property has been inspected several times and the Carpenters have received several additional payments from State Farm.[1]  However, the Plaintiffs assert that they have not yet been adequately compensated under their policy.

## II.     PRESENT MOTIONS

Defendant has filed a Motion for Partial Summary Judgment as to Plaintiff's Mold Claims.  In their motion, State Farm asserts that the Carpenter's policy unambiguously excluded coverage for mold damage regardless of the cause of the mold and therefore asks that the Court "enter an Order providing that Plaintiffs may not recover for mold damage in this case." (Rec. Doc. 189, at 2.)  The Plaintiffs have responded and argue that the policy does not exclude recovery for damages that would have been sustained even in the absence of mold, that State Farm has not met their burden of proving that any specific damages in this case fit into the exclusion, and that significant issues of material fact therefore remain making summary judgment inappropriate.  Furthermore, Plaintiffs argue that they can recover for mold damage to the extent that it resulted from State Farm's alleged bad faith in adjusting their claim.

Defendant has also filed a Motion for Partial Summary Judgment as to Certain Additional Living Expenses Claims.  In this motion, State Farm argues that the policy only allows recovery of additional living expenses ("ALE") when a policy holder's home is rendered uninhabitable. Because the Carpenters actually lived in their home from September of 2005 until at least

---

[1] The details of these inspections and payments are irrelevant to resolution of the issues presently before the Court.

December of 2005, State Farm claims that the house could not have been uninhabitable as a matter of law. State Farm further argues that the policy allows for recovery of ALE only for the minimum time required to settle elsewhere. Therefore, State Farm asserts that the Carpenters cannot recover ALE for the time period after they had relocated to West Monroe as a matter of law. The Carpenters have responded and take the position that whether their house was uninhabitable is a question of fact. Additionally, they argue that they would not have relocated but for State Farm's bad faith failure to timely adjust and pay their claim and that they should not be precluded from recovering for ALE that resulted from State Farm's alleged bad faith.

## III.  LAW & ANALYSIS

Summary judgment is appropriate in a case if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. V. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "[i]f the evidence is merely colorable, or is not significantly

4

probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case and on which they bear the burden of proof. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48, 106 S.Ct. 2505.

### A. Plaintiff's Mold Claims

The parties apparently do not dispute that Plaintiff's homeowners policy contained the mold provision discussed above or that the provision applies to any mold damage that would not have occurred absent the mold. Accordingly, State Farm "requests that this Court enter an Order providing that 'even where mold results from a covered cause of loss[,] the endorsement unambiguously excludes coverage." (Rec. Doc. 197, at 1-2 (quoting *Deutsch v. State Farm Fire & Cas. Co.*, Case No. 06-8450, 2009 WL 2599234, at *3 (E.D. La. Aug. 21, 2009)).) State Farm then goes on to concede, in a motion for summary judgment, that "[t]he jury will determine how much of Plaintiffs' alleged damages are excluded." (Rec. Doc. 197, at 2.) Thus, the Defendant is essentially requesting a jury instruction. While the Defendant may be correct on the law, such a request is premature.

As Plaintiff points out, the Defendant bears the burden of proving that an otherwise covered damage falls within an applicable exclusion. *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009). Considering the exclusion at issue here, which precludes only that damage that would not have occurred in the absence of mold, there remain numerous issues of

5

material fact regarding the cause of the mold. Specifically, Defendant will have to prove that any damage they seek to exclude would not have occurred in the absence of mold.[2] Furthermore, if Plaintiff is able to prove that State Farm acted in bad faith and that this led to mold damage, then Plaintiff may be able to recover for this damage.[3] Thus, it is apparent that many factual questions remain regarding the cause of Plaintiff's damages and summary judgment is inappropriate. However, the Court will deal with the mold exclusion with an appropriate jury instruction.

### B. Plaintiff's Claims for Alternative Living Expenses

State Farm next argues that they are entitled to summary judgment regarding certain claims that the Carpenter's have made for ALE. Pursuant to the Carpenters' policy, "[i]f a Loss Insured causes the residence premises to become uninhabitable, we cover the necessary increase in cost to maintain your standard of living. Payment is for the shortest time required . . . for your household to settle elsewhere." First, State Farm argues that the Carpenters actually lived in their home from September of 2005 until at least December of 2005, and that the house could not have been uninhabitable as a matter of law. However, the Plaintiffs have presented evidence that the house was badly damaged and that living conditions were unbearable. While the fact that the Carpenters actually lived in the house during the relevant period may be used as evidence that the house was not uninhabitable, this fact is not dispositive. Many people in desperate situations

---

[2] As Judge Zainey has recognized, the mold exclusion is very broad in its application. *Deutchsh,* 2009 WL 2599234, at *4. If the Defendant is able to prove that any of Plaintiffs' damages would not have occurred absent the mold, than those damages are excluded under the policy even if they were caused by wind driven rain or some other covered loss. *Id.*

[3] Whether or not State Farm acted in bad faith is not an issue before the Court at this time.

are forced to live in places that would be considered uninhabitable. Thus, the condition of Plaintiffs house is a question of fact and summary judgment is inappropriate. Of course, if the Plaintiffs are successful in proving at trial that the house was uninhabitable, they will also bear the burden of proving what ALE damages they sustained.

State Farm next argues that Plaintiffs' recovery of ALE is limited as a matter of law to "the shortest time required . . . for [their] household to settle elsewhere." Accordingly, State Farm claims that the Carpenters may only recovery ALE for the time period prior to April of 2006, when they settled in West Monroe. Plaintiffs respond that under Louisiana law, the ALE provision was a resolutory condition which could be terminated upon their resettling. They further contend that they were forced to relocate only as a result of State Farm's bad faith refusal to fully compensate them, and that State Farm's should not be able to benefit from their own bad faith by having the resolutory condition terminated. According to the Louisiana Civil Code, a resolutory condition is a provision that "may be immediately enforced but will come to an end when [a specified] uncertain event occurs." La. Civ. Code Ann. art. 1767. In addition, "[a] resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith." *Id.*

In this case the Plaintiffs misread the ALE provision as resolutory when in fact, it is not. State Farm's obligation to reimburse ALE does not terminate when an insured actually resettles, but instead terminates after "the shortest time required . . . to settle elsewhere." This is not a conditional event. Furthermore, any bad faith by State Farm would not have decreased the amount of time necessary "to settle elsewhere." Regardless of any alleged bad faith conduct by State Farm, the Carpenters were actually able to resettle in April of 2006. Assuming that they

7

could not have done so in less than "the shortest time required . . . to settle elsewhere," it is clear that the ALE provision applies to exclude all claims by the Plaintiffs for ALE after resettling. Accordingly, summary judgment will be granted regarding these claims.

IV.   **CONCLUSION**

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Partial Summary Judgment as to Plaintiff's Mold Claims (Rec. Doc. 189) IS DENIED.  IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment as to Certain Additional Living Expenses Claims (Rec. Doc. 190) IS GRANTED IN PART AND DENIED IN PART.

New Orleans, Louisiana, this 23rd day of November, 2009.

UNITED STATES DISTRICT JUDGE